# EXHIBIT A

DIVERSANT

331 Newman Springs Road
Building 3, 2nd Floor, Suite #350
Red Bank, NJ 07701
Phone: 732 222 1250
www.diversant.com

## AT-WILL, RESTRICTIVE COVENANT AND ARBITRATION AGREEMENT

This At-Will, Restrictive Covenant and Arbitration Agreement ("Agreement") is executed by and between **Mitchelle Carino** ("Employee") and DIVERSANT, LLC and its parent, affiliates and subsidiaries ("Employer") (Employee and Employer, collectively, the "Parties"), on the date reflected on the last page of this Agreement.

**WHEREAS**, Employer is in the business of providing information technology staffing services to customers ("Employer's Business"); and

**WHEREAS**, Employee and Employer desire that Employee become employed by, or continue his/her employment with, Employer, and receive specialized training, Employer's Confidential Business Information (as defined below), and substantial compensation from Employer; and

**WHEREAS**, Employee initially will be assigned, or is currently assigned, to the following "Business Location": **San Francisco, CA**; and

**WHEREAS**, for the purposes of this Agreement, the Business Location shall be the primary office location(s) used by Employee for performance of duties on behalf of Employer during the most recent twelve (12) months of Employee's employment with Employer; and

**WHEREAS**, as an employee of Employer, Employee has gained and/or will gain, specialized knowledge, training, and experience on all aspects of Employer's Business, including but not limited to, knowledge and experience relating to Employer's Confidential Business Information (as that term is defined below), and has or will establish personal relationships and goodwill with Employer's customers, clients, consultants, and employees, at Employer's expense and all by reason of having worked for Employer; and

**WHEREAS**, Employee acknowledges and agrees that the covenants contained in this Agreement are reasonable and necessary to protect Employer's Confidential Business Information and goodwill, and to protect Employer from unfair competition, including the unfair use of Employer's Confidential Business Information, specialized training and customer goodwill by Employee, and that Employer would not be willing to employ Employee, or provide Employee the specialized training, Employer's Confidential Business Information, and customer relationships Employee will receive during his/her employment by Employer, absent Employee's agreement to such covenants;

**NOW, THEREFORE**, in consideration of the promises, the mutual covenants and agreements contained herein, the employment and/or continued employment of Employee by Employer, and other good and valuable consideration, the Parties agree as follows:



331 Newman Springs Road
Building 3, 2nd Floor, Suite #350
Red Bank, NJ 07701
Phone: 732 222 1250
www.diversant.com

1.  **Employment At Will.**   Employee acknowledges and agrees that (i) his/her employment is at-will, meaning that it is not for any definite period of time and that either Employee or Employer may terminate the employment relationship at any time with or without cause or notice; (ii) employment at-will also means that Employer may, in its sole discretion, alter, modify and/or terminate any and all terms and conditions of Employee's employment with Employer, including, without limitation, Employee's compensation, duties, hours of work, title, place of employment or Business Location; (iii) nothing in this Agreement shall limit Employer's right or ability to terminate Employee's at-will employment relationship; and (iv) no officer, employee or representative of Employer is authorized to enter into an agreement, express or implied, with Employee for employment for a specified period of time unless such agreement is reduced to a written contract signed by Employer's Chief Executive Officer. Employee acknowledges and agrees that any change, whether material or immaterial, to the terms or conditions of his/her Employment, including without limitation changes to Employee's position, title, duties, salary, benefits, and/or compensation, shall not effect any change in Employee's obligations under this Agreement, or affect the validity or enforceability of any term in this Agreement, including without limitation the terms set forth in Paragraphs 2, 3, 4, 5, 7, 11, 12, 13 and 14.

2.  **Confidential Business Information/Trade Secrets.**   Employee agrees not to use, disclose, or exploit, directly or indirectly, for his own benefit or for the benefit of any person or entity other than Employer, any Confidential Business Information belonging to Employer, or provided to Employer by a third party pursuant to an obligation of confidentiality, except as necessary to perform Employee's duties on behalf of and as directed by Employer. Employee further agrees to take all appropriate action, whether by instruction, agreement or otherwise, to insure the protection, confidentiality, and security of all Confidential Business Information. "Confidential Business Information" includes, but is not limited to, information relating to Employer's: actual or potential consultant information and lists, actual or potential employee information that is of a personal nature such as social security numbers, designs, compilations, programs, methods, techniques, drawings, processes, research and development, distribution systems, legal affairs, accounting, finances, actual or potential customer information and lists, customer preferences, billing rates, pricing practices, marketing, recruiting, and placement strategies, business plans, margins, prices, operations, existing and future services, contract expiration dates, forecasts and forecast assumptions and volumes, and other financial, sales, marketing, services, and operations information, whether written or otherwise, which is not common knowledge in Employer's industry or to the public. Confidential Business Information also includes, but is not limited to, any of Employer's trade secrets, without regard to form, which includes, but is not limited to, technical or nontechnical data, a formula, an invention, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, marketing or business development plans, or a list of actual or potential customers, consultants, employees, or suppliers which: (i) is not commonly known by or available to the public; (ii) derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (iii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.  Confidential Business

Information shall not include any data or information that has been voluntarily disclosed to the public by Employer (except where such public disclosure has been made, directly or indirectly, by Employee, or anyone else, without authorization), or that has been independently developed and disclosed by others with proper authority to do so, or that otherwise enters the public domain through lawful means. Employee's agreement to protect Confidential Business Information belonging to Employer extends to instances in which Employee is using non-Employer computer resources, such as personal e-mail, internet and instant messaging accounts, as well as computer equipment not owned by Employer.

Employee further agrees to report immediately to Employer any incident that may compromise or has compromised Employer's Confidential Business Information, including, without limitation, the loss or theft of any hard copy of such information, any disk or drive containing such information, and any laptop, desktop, or handheld computer or device, whether Employer-owned or otherwise, containing such information. Employee agrees to abide by and follow all Employer-mandated standards and policies relating to the creation, maintenance, use, and preservation of the confidentiality of passwords and encryption methods for protecting Confidential Business Information, which standards and policies Employer may amend in its sole discretion.

3.   **Agreement Not to Compete.**   Employee acknowledges that he/she has and/or will, during his/her employment with Employer, become familiar with Employer's Confidential Business Information, and has developed and/or will develop business relationships, goodwill and personal relationships with Employer's customers, clients, consultants, vendors, and employees, all at Employer's expense and because of Employee's employment with Employer. Employee further acknowledges that his/her services have been and shall be of special, unique and extraordinary value to Employer and that as a result of Employer's specialized training of Employee and provision of Confidential Business Information to Employee, Employee could unfairly compete with Employer unless subject to reasonable post-employment restrictions.

Employee acknowledges and agrees that at all times during Employee's employment with Employer Employee will devote his/her entire time, attention, energies, efforts, and skills, with undivided loyalty, to the business of Employer and use his/her best efforts to promote the interest and business of Employer. Employee agrees that during the term of his/her employment with Employer, Employee shall give Employer notice of any and all business opportunities within the scope of Employer's Business of which Employee learns and will not take advantage of or assist another individual or entity, directly or indirectly, in taking advantage of such opportunities.

Employee agrees that, during his/her employment with Employer and for one (1) year after the termination of the employment relationship, regardless of whether the termination was voluntary or involuntary (the "Restricted Period"), Employee will not, within the Territory, as that term is defined herein, provide information technology staffing services, directly or indirectly, whether as an employee, consultant, independent contractor, or otherwise, similar to those Employee provided to or for Employer, to or for any corporation, individual, enterprise, entity, or association that competes with Employer in Employer's Business. Employee further agrees that, during the Restricted Period and within the Territory, he/she shall not operate an information technology staffing services business which competes with Employer in Employer's Business.

For purposes of this Agreement, "Territory" shall mean a 50-mile radius around the Business Location(s) utilized by Employee during the most recent twelve (12) months of Employee's employment with Employer.

4. **Agreement Not to Solicit Employees/Consultants.** Employee agrees that he/she shall not, during the Restricted Period, directly or indirectly, (i) hire, solicit, or attempt hire or solicit, on behalf of any person or entity other than Employer, any person who is or was within the previous twelve months an employee of Employer; or (ii) hire, solicit, or attempt hire or solicit, any person who is or was within the previous twelve months a consultant for whom the Employer bills or billed a third party.

5. **Agreement Not to Solicit Customers/Prospective Customers.** Employee agrees that he/she shall not, during the Restricted Period, directly or indirectly, solicit or attempt to solicit any information technology staffing services business, except on behalf of Employer, from any actual or prospective customer of Employer (i) with whom Employee had direct contact on behalf of Employer during the most recent two years of his/her employment with Employer; (ii) for whom Employee performed services, or directed the performance of services by other employees of Employer, during the most recent two years of his/her employment with Employer; and/or (iii) about whom Employee learned Confidential Business Information.

6. **Irreparable Harm/Injunctive Relief.** In the event of any breach or threatened breach of any of Paragraphs 2, 3, 4, 5, 7, 11, 12, 13, or 14 of this Agreement, Employee acknowledges and agrees that Employer would be irreparably harmed thereby and that any remedies at law would be inadequate. Accordingly, Employee agrees that in such event, Employer shall be entitled to immediate injunctive or other equitable relief to restrain or enjoin any such breach or threatened breach and such other relief as deemed appropriate by the court. The Parties expressly waive any requirement for a bond to be posted in conjunction with a request for a temporary, preliminary or permanent injunction.

7. **Non-disparagement.** Employee agrees that during his/her employment and at all times thereafter Employee will not make any maliciously false or defamatory statements about Employer or any of its products or services, customers, directors, officers, employees and/or consultants.

8. **Reasonableness of Restrictions.** Employee agrees that the time, territorial and other limitations in Paragraphs 2, 3, 4, 5, 7, 11, 12, 13, and 14 are reasonable and properly required for the adequate protection of Employer's Confidential Business Information; customer, vendor, and employee relationships and goodwill; and Employer's Business. If any provision of this Agreement is found unreasonable or overbroad by a court of competent jurisdiction, then Employee and Employer agree that the court shall modify such provision to make it reasonable and enforce it as modified. In addition, even if a limitation is found to be overbroad or unreasonable in one State, Employee agrees to be bound by the limitation in all other applicable States.

9. **Severability.** If any provision or any part of any provision of this Agreement is held invalid or unenforceable by any court, such holding shall not affect the validity or enforceability of any other provisions hereof, all of which shall remain in full force and effect. By way of

example only, Employee agrees that if any portion, or all, of Paragraphs 2, 3, 4, 5, or 7 is found unreasonable by a court of law or equity, and the court finds that particular paragraph invalid as a matter of law, Employee shall remain bound by the remaining such Paragraphs. **Employee agrees that any ruling that any of Paragraphs 2, 3, 4, 5, or 7 is unenforceable shall not render any other Paragraph unenforceable.**

10. **Tolling of Restrictions.** In the event that either party initiates litigation in an attempt to confirm or enforce its rights under this Agreement, the Parties agree that the period during which Employee is prohibited from competing with Employer or soliciting employees, consultants, customers and/or clients of Employer as described above will be tolled during the period of time in which such litigation is pending, including any appeal.

11. **Monitoring and Inspection of Computer Use and Activity.** Employee agrees that Employer has the right, exercisable in its sole discretion, to monitor and review any electronic data that is viewed, edited, stored, drafted, saved, or transmitted on any computer that is owned or leased by Employer, or otherwise used by any employees, independent contractors, or consultants of Employer in the course of the services they provide to Employer. Employee further agrees that Employer has the right to limit the use by Employee of its computers and computer-related resources. Employee is expressly prohibited from using any of Employee's personal computer resources, including, without limitation, Employee's personal internet, e-mail, and instant messaging accounts, to conduct Employer's Business or to transmit or receive any Confidential Business Information, without Employer's prior express written authorization and protection by Employer-approved encryption. Employee agrees that Employer may inspect, at any time, the entire contents of any electronic data storage device or any e-mail or instant messaging account to which any Confidential Business Information or other proprietary information belonging to Employer is viewed, edited, saved, transmitted, or received by Employee, including, without limitation, any of Employer's or Employee's computer hard drives, portable drives, thumb drives, software, webmail, e-mail or instant messaging accounts. Employee acknowledges that Employer will routinely monitor, track and, in some instances, ascertain the identity of the authors, recipients, and contents of computer-based communications by Employee. Employer's right to monitor computer use and activity includes the right to review the content of any and all electronic communications using Employer's computer equipment or networks or otherwise relating to Employer's Business. **By signing this Agreement, Employee knowingly and voluntarily consents to being monitored and to having his/her communications reviewed by Employer, and Employee specifically acknowledges Employer's right to conduct all such monitoring.** Employee is aware that he has no individual rights to the contents or use of Employer's computer resources, and all data on or material created using Employer's computer resources is Employer's property. Employee acknowledges that he/she has no expectation of privacy for any Internet or other use via Employer-owned or -provided connections or while using Employer's computer resources.

12. **Return of Employer Property and Information.** Immediately upon termination of Employee's employment for any reason, or at any other time that Employer requests in writing, Employee shall return to Employer all materials, information, property and equipment of Employer in the possession or under control of Employee including, without limitation, any and all Confidential Business Information and copies thereof, any electronic storage device or media on which any Confidential Business Information has at any time been stored, including, without

5

limitation, hard drives, portable drives, thumb drives, disks or other storage devices, computer equipment, computer files, audio/video tape recordings, records, documents, drawings, specifications, lists, equipment and supplies, promotional materials, scripts and similar items relating to the business of Employer, and all copies thereof or extracts therefrom. Employee agrees that he/she shall not retain any lists, notes or records of the names, contact information or preferences of any customers of Employer, any of Employer's employees, independent contractors or consultants, or any individuals placed on assignments by Employer.

13.  **Inventions.**  To the extent that Employee, in the course of his/her employment with the Employer, incorporates into an Employer product, process or machine a Prior Invention owned by Employee or in which Employee has an interest, Employee agrees that Employer is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such Prior Invention as part of or in connection with such product, process or machine. The term "Prior Invention" is defined as any invention, original work of authorship, development, improvement or trade secret which was made by Employee prior to Employee's employment with Employer, belongs to Employee and relates to Employer's current, former or proposed business, products or research and development. Employee further agrees to promptly make full written disclosure to Employer, hold in trust for the sole right and benefit of Employer, and hereby assigns to Employer or its designee, all of Employee's right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks or trade secrets, whether or not patentable or registrable under copyright or similar laws, which Employee may solely or jointly conceive, develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time that he/she was in the employ of Employer (collectively referred to as "Inventions"), except as provided below. Employee further acknowledges that all original works of authorship that are made by Employee (solely or jointly with others) within the scope of and during the period of his/her employment with Employer and which are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act. Employee understands and agrees that the decision whether or not to commercialize or market any invention developed by Employee solely or jointly with others is within Employer's sole discretion and for Employer's sole benefit and that no royalty will be due to Employee as a result of Employer's efforts to commercialize or market any such invention.

14   **Patent and Copyright Registration.**  Employee agrees to assist Employer, or its designee, at Employer's expense, in every proper way to secure Employer's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to Employer of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which Employer shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to Employer, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto. If Employer is unable because of Employee's mental or physical incapacity or for any other reason to secure Employee's signature to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering Inventions or original works of authorship assigned to Employer as above, then Employee hereby irrevocably designates and appoints

Employer and its duly authorized officers and agents as Employee's agent and attorney in fact, to act for and in his/her behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent or copyright registrations thereon with the same legal force and effect as if executed by Employee.

15. **Future Employment.** Employee agrees that, during the Restricted Period, he/she will provide a complete copy of this Agreement to any potential new employer or actual new employer prior to beginning employment with such potential or actual employer. Employee further agrees that, should he/she accept employment or other relationship for remuneration from any individual or entity engaging in Employer's Business within the Restricted Period, no later than five (5) business days prior to commencement of such employment, he/she shall give written notice to Employer of such employment and will identify his/her start date, position/job title and anticipated responsibilities.

16. **Accurate Identification of Employer.** Employee agrees that during his/her employment with Employer, Employee will represent himself/herself as being employed solely by DIVERSANT, LLC. During discussions with potential customers, Employee must clearly identify DIVERSANT, LLC as an information technology staffing services company or as a company that provides information technology staffing services.

17. **Attorneys' Fees and Costs.** In any suit or other proceeding to determine, confirm, or enforce any rights or obligations under this Agreement, the prevailing party shall be entitled to an award of its reasonable attorneys' fees, expert witness fees and all costs and expenses of litigation and appeal.

18. **Choice of Law.** The Parties agree and acknowledge that this Agreement shall be governed by the Federal Arbitration Act ("FAA") and, to the extent not in conflict with the FAA, the laws of the State of New Jersey, without regard to its conflict of laws provisions.

19. **Binding Arbitration and Class / Collective Action Waiver.** The Parties agree and acknowledge that except as explicitly provided herein, enforcement of any provision of this Agreement, or any other dispute between the Employee and Employer that directly or indirectly arises from or relates in way to the Employee's employment with or separation from the Employer, including without limitation any and all disputes or claims related to wages, commissions, compensation, harassment, discrimination, retaliation and/or any other claim under federal, state, municipal or the common law (collectively, "Legal Disputes"), shall be resolved by final and binding Arbitration. The Parties agree that the Arbitration shall be held in the county and state where the Employee currently works for Employer or most recently worked for Employer. The Arbitration shall be conducted by an Arbitrator(s) provided by an impartial third-party Arbitration provider, National Arbitration and Mediation ("NAM"), and be subject to NAM's employment Rules and Procedures and the Fee Schedule in effect at the time the claim is filed with NAM, except where such Rules are inconsistent with the terms of this Agreement, in which case the Agreement shall govern. Any award of the Arbitrator(s) is final and binding, and may be entered as a judgment in any court of competent jurisdiction. Any issues about whether a dispute constitutes a Legal Dispute subject to arbitration will be determined by a court of competent jurisdiction and not by an arbitrator. In the event a court having jurisdiction finds any

7

portion of this Agreement unenforceable, that portion shall not be effective and the remainder of the Agreement shall remain in full force and effect.

The Parties understand and acknowledge that by agreeing to arbitrate the Legal Disputes covered by this Paragraph 19, they are waiving the right to resolve the Legal Disputes in court and waiving any right to a jury trial with respect to the Legal Disputes.

Notwithstanding any other provision of this Agreement or any other agreement, the Parties understand and agree that no Legal Dispute between the Employee and Employer may be included in any class or collective arbitration or any other class or collective proceeding, including without limitation any claims asserted under the Fair Labor Standard Act or any other claim under state, federal, municipal or common law. The exclusive method for resolving any such Legal Dispute will be binding arbitration on an individual basis.

"Legal Disputes" under this Agreement do not include any claims that the Employee cannot be required to arbitrate as a matter of law. Nothing in this Agreement bars the Employee from filing a claim or charge with a governmental administrative agency, such as the Equal Employment Opportunity Commission or the National Labor Relations Board, or from filing a workers' compensation or unemployment compensation claim.

20. **Injunctive Relief.** Notwithstanding the Parties' agreement to submit all Legal Disputes to final and binding arbitration as set forth in Paragraph 19, the Employer may, in its sole discretion, seek and/or obtain temporary, preliminary and/or final injunctive relief enforcing Paragraphs 2, 3, 4, 5, 7, 11, 12, 13, or 14 of this Agreement in any court of competent jurisdiction, which includes the Superior Court of New Jersey Monmouth Vicinage and/or the United States District Court for the District of New Jersey. The Parties hereby waive any objection to jurisdiction, venue or forum in the Superior Court of New Jersey Monmouth Vicinage or in the United States District Court for the District of New Jersey for purposes of any litigation commenced pursuant to this Paragraph 20.

21. **No Inconsistent Obligation.** Employee is aware of no obligations, legal or otherwise, inconsistent with the terms of this Agreement or with his/her undertaking employment with Employer. Employee will not disclose to Employer, or use or induce Employer to use, any protected confidential information or trade secrets of others, including any prior employers; nor will Employee engage in any solicitation of business on behalf of Employer that would violate any enforceable obligations owed to others, including any prior employers. Employee represents and warrants that he/she has returned all property and protected confidential information belonging to all prior employers.

22. **Amendments.** No amendments to this Agreement shall be effective unless in writing and signed by the Parties.

23. **No Waiver.** The waiver by any party hereto of the breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent, contemporaneous, or other breach of any party.

24. **Assignment.** The rights and duties of the Parties shall not be assignable by either

party, except that this Agreement and all the rights hereunder may be assigned by the Employer to any corporation or other business entity that succeeds to all or substantially all of Employer's business through merger, consolidation, or corporate reorganization, or by acquisition of all or substantially all of the assets of Employer.

**25. Entire Agreement.** This Agreement constitutes the entire understanding of the Parties hereto with respect to the subject matter hereof. There are no agreed-upon restrictions, promises, warranties, covenants or undertakings other than those expressly set forth herein. This Agreement supersedes all prior negotiations, agreements, and undertakings between the Parties hereto with respect to such subject matter.

**26. Notice.** Any notice provided for in this Agreement shall be in writing and shall be either personally delivered, sent by reputable overnight courier service and a second copy sent by regular first-class mail, or sent by telecopy (with a second, hard copy to follow by regular first class mail). Notices to the Employee may be sent to the address indicated on the last page of this Agreement, and notices to the Employer may be sent to:

> DIVERSANT LLC
> 331 Newman Springs Road
> Building 3, 2nd Floor
> Red Bank, NJ 07701

or to any other address as to any of the parties hereto, as such party shall designate in a written notice to the other party hereto. All notices sent pursuant to the terms of this Paragraph shall be deemed received (i) if personally delivered, then on the date of delivery, (ii) if sent by telecopy, then on the date of transmission, or (iii) if sent by overnight, express carrier, then on the next federal banking date immediately following the day sent.

**27. Counterparts.** This Agreement may be executed in multiple counterpart copies and by facsimile signatures, each and all of which will be deemed an original.

**28. Survival of Obligations.** The covenants contained in this agreement shall survive termination of Employee's employment to the extent provided herein, regardless of who causes the termination and under what circumstances.

[Remainder of page intentionally blank.]

17368729v.2

IN WITNESS WHEREOF, the Parties have read and understand this Agreement and agree to be bound by its terms. The Parties have executed this Agreement as of the date(s) below.

**EMPLOYEE:**

By: _____  LA
                              8/13/15

Print Name: Mitchelle Carino

Date: JULY 23, 2015

Employee's Address for Delivery of Notice:

Mitchelle Carino
233 Sansome Street, Suite 1008
San Francisco, CA 94104

**EMPLOYER:**

DIVERSANT LLC

By: _____

Print Name: Gene Waddy

Title: CEO

Date: 7/22/15

10