RECEIVED

SEP 24 2018

AT 8:30_____M
WILLIAM T. WALSH
CLERK

NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DIVERSANT, LLC, | |
| Plaintiff, | Civ. No. 18-3155 |
| v. | |
| MITCHELLE CARINO, | **OPINION** |
| Defendant. | |

THOMPSON, U.S.D.J.

### INTRODUCTION

This matter comes before the Court on a Motion for Summary Judgment brought by

Plaintiff Diversant, LLC ("Plaintiff"). (ECF No. 43.) Defendant Mitchelle Carino

("Defendant") opposes and requests further discovery pursuant to Rule 56(d) of the Federal

Rules of Civil Procedure. (ECF No. 48.) Defendant also cross-moves to dismiss (ECF No. 50),

which Plaintiff opposes (ECF No. 53). The Court has decided the motions after considering the

written submissions without oral argument pursuant to Local Civil Rule 78.1(b). For the

following reasons, Defendant's Cross Motion to Dismiss is denied, Plaintiff's Motion for

Summary Judgment is denied, and Defendant's request for further discovery pursuant to Rule

56(d) of the Federal Rules of Civil Procedure is granted.

### BACKGROUND

Plaintiff, a New Jersey limited liability company, provides information technology ("IT")

staffing services to mid-market and Fortune 500 companies nationwide. (Compl. ¶¶ 1, 5, ECF

No. 1.) Plaintiff assists companies in identifying and recruiting "IT talent in the marketplace"

1

and thus maintains a large database of consultants in order to serve its clients. (*Id.* ¶¶ 9, 11.)
Many of Plaintiff's larger clients, such as Wells Fargo, employ "hiring managers," individuals
who work for the client and have the authority to select consultants from staffing firms such as
Plaintiff. (Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts ("Def.'s Resp. SMF") ¶
3, ECF No. 48-3.)

In July of 2015, Plaintiff acquired Vircon, a competing IT staffing firm based in San
Francisco, California, consequently acquiring Vircon's client contracts and inheriting Vircon's
employees. (Compl. ¶¶ 7, 15.) One such employee, Defendant, was a Business Development
Director in Vircon's San Francisco office. (Def.'s Resp. SMF ¶¶ 1–2.) Defendant developed
relationships with new clients and serviced existing clients by identifying and recommending
individuals with IT expertise, also known as consultants. (*Id.* ¶ 2.) In this role, Defendant had
access to Plaintiff's client and consultant database. (*Id.* ¶ 6.) All of the clients that Defendant
serviced while employed by Plaintiff were existing clients that were either assigned to him by
Plaintiff (or Vircon before it was acquired by Plaintiff) or that Defendant sourced using
Plaintiff's resources. (*Id.* ¶ 4.)

In the wake of Plaintiff's acquisition of Vircon, Defendant was required to enter into a
new employee agreement with Plaintiff. Defendant met with Plaintiff's Chief Operations
Officer, Jim Yoshimura, and discussed Defendant's potential employment. (Def.'s
Counterstatement of Undisputed Material Facts ("Def.'s Counter SMF") ¶ 4, ECF No. 48-2.)
Mr. Yoshimura, on behalf of Plaintiff, eventually offered Defendant a job entailing more or less
the same responsibilities Defendant had while working for Vircon. (*Id.* ¶¶ 4–7.)

On July 23, 2015, Defendant executed the "At-Will, Restrictive Covenant and Arbitration[6]
Agreement" (the "Agreement"), agreeing to several covenants of import here. (Def.'s Resp.

SMF ¶¶ 7–8.)  First, Defendant agreed never to use or disclose confidential information and/or

trade secrets ("Confidential Business Information") that includes the following:

> information relating to [Plaintiff's]: actual or potential consultant information and
> lists, actual or potential employee information that is of a personal nature . . . .
> [and] any of [Plaintiff's] trade secrets, . . . [which includes] a list of actual or
> potential customers, consultants, employees, or suppliers which: (i) is not
> commonly known by or available to the public; (ii) derives economic value,
> actual or potential, from not being generally known to, and not being readily
> ascertainable by proper means by other persons who can obtain economic value
> from its disclosure or use; and (iii) is the subject of efforts that arc reasonable
> under the circumstances to maintain its secrecy.

(Agreement ¶ 2 (the "Non-Disclosure Clause"), Ex. C, ECF No. 43-3.)

Second, Defendant agreed that for a period of one year following the termination of his

employment with Plaintiff, Defendant would not compete with Defendant's business within a

fifty-mile radius of Plaintiff's business location.  More specifically, Defendant assented that:

> [Defendant] will not . . . provide information technology staffing services, directly
> or indirectly, whether as an employee, consultant, independent contractor, or
> otherwise, similar to those [Defendant] provided to or for [Plaintiff], to or for any
> corporation, individual, enterprise, entity, or association that competes with
> [Plaintiff] in [Plaintiff's] Business. . . . [Defendant] shall not operate an
> information technology staffing services business which competes with [Plaintiff]
> in [Plaintiff's] Business.

(*Id.* ¶ 3 (the "Non-Compete Clause").)

Third, also for a period of one year following the termination of his employment with

Plaintiff, Defendant agreed not to "solicit or attempt to solicit any information technology

staffing services business" from any of Plaintiff's actual or prospective customers:

> (i) with whom [Defendant] had direct contact on behalf of [Plaintiff] during the
> most recent two years or his/her employment with [Plaintiff]; (ii) for whom
> [Defendant] performed services, or directed the performance or services by other
> employees of [Plaintiff], during the most recent two years of his/her employment
> with [Plaintiff]; and/or (iii) about whom [Defendant] learned Confidential
> Business Information.

(*Id.* ¶ 5 (the "Non-Solicitation Clause").)

a base salary and the ability to earn commissions."), *and id.* ¶ 15 ("The consideration for the [Addendum] was the ability to earn a retention bonus if certain sales targets were met . . . ."), *with* Def.'s Resp. SMF ¶ 10 (contending that "the promise to be paid the bonus was also consideration for accepting the Agreement"), *and id.* ¶ 15 (arguing that "the consideration for the [Addendum] was Defendant agreeing to be employed by [Plaintiff]").) Plaintiff paid Defendant a bonus for his performance in his first year, but Plaintiff did not pay Defendant a bonus for his performance in his second year. (Def.'s Resp. SMF ¶ 17.) Because of Plaintiff's failure to pay the bonus in the second year, Defendant commenced a legal action in California seeking the missed payment. (*Id.* ¶ 18.)

On January 3, 2018, Defendant resigned from his employment with Plaintiff and on the same day began employment with Artech, a San Francisco-based firm that is located within fifty miles of Plaintiff, services Wells Fargo, and, as Defendant admits, "is a competitor of [Plaintiff] in the IT staffing industry." (*Id.* ¶¶ 19, 23, 28–29, 32.) Defendant knowingly and intentionally refused to tell Plaintiff that he was joining a competitor (*id.* ¶¶ 30–31) and, in fact, Defendant began soliciting and doing business with Wells Fargo immediately upon joining Artech (*id.* ¶¶ 35–38). Defendant admits that if the Agreement is enforceable, he breached it. (*Id.* ¶¶ 21–26; *see also* Carino Dep. 63:17–64:19, Ex. B, ECF No. 43-2.)

On March 5, 2018, Plaintiff filed a Verified Complaint and a Motion for Temporary Restraining Order, Preliminary Injunction, Expedited Discovery, and Preservation Order. Plaintiff pleads two counts: (1) breach of contract, contending that Defendant breached the Agreement in contravention of Paragraph 3 (working for a competitor within fifty miles of Plaintiff) (*id.* ¶ 59), Paragraphs 4 and 5 (soliciting Plaintiff's clients and consultants) (*id.* ¶ 60), and Paragraph 15 (failing to inform Plaintiff of new employment) (*id.* ¶ 62); and (2) injunctive

5

relief, seeking to enjoin Defendant from misappropriating Plaintiff's Confidential Business Information, working for one of Plaintiff's competitor within one year of severance from Plaintiff, and soliciting Plaintiff's clients (*id.* ¶ 69). On April 2, 2018, the Court issued a Memorandum Opinion determining that New Jersey law governs the dispute. (Mem. Op., ECF No. 18.)

The parties agreed to expedite discovery in anticipation of a preliminary injunction hearing (*see generally* ECF Nos. 21–26), but several issues occurred. On April 10, 2018, Defendant served to Plaintiff a First Request for Production of Documents, First Set of Interrogatories, and Rule 30(b)(6) Deposition Notice. (DiMaria Cert. ¶ 2, ECF No. 48-4.) Defendant requested, among other things, discovery relating to Plaintiff's failure to pay Defendant the 2017 bonus under the Addendum and discovery relating to Plaintiff's relationship with its client Wells Fargo. (*Id.* ¶¶ 3–5.) The parties subsequently stipulated to several extensions of time in order to respond to discovery requests (ECF Nos. 25, 28), and Plaintiff ultimately even requested to reschedule the preliminary injunction hearing (ECF No. 30). On May 7, 2018, Plaintiff served responses to Defendant's discovery requests. (DiMaria Cert. ¶ 6.) On May 10, 2018, Defendant sent a deficiency letter to Plaintiff identifying Plaintiff's failure to produce documents relating to Plaintiff's failure to pay Defendant the 2017 bonus and Plaintiff's relationship with Wells Fargo. (*Id.* ¶ 7.) Plaintiff responded to the deficiency letter on May 14, 2018, and the parties participated in a meet a confer regarding the deficiency letter on May 17, 2018. (*Id.* ¶¶ 8–9.) Although Plaintiff served supplemental interrogatory answers and responses on May 18, 2018, Plaintiff again did not produce documents relating to Plaintiff's failure to pay Defendant the 2017 bonus and Plaintiff's relationship with Wells Fargo. (*Id.* ¶ 10.) Defendant avers that he did not subsequently file a motion to compel between May 18 (date of Plaintiff's

6

supplemental response) and May 28, 2018 (deadline for Defendant's opposition to Plaintiff's motion for injunctive relief) because of "the expedited nature of discovery" and because "Defendant's brief was due to the Court within a few days after receiving Plaintiff's supplemental discovery responses." (*Id.* ¶ 11.)

On June 11, 2018, the Court held a hearing regarding Plaintiff's Application for Preliminary Injunction. (ECF No. 41.) On that same day, the Court issued a Preliminary Injunction. (ECF No. 40.) The Court enjoined Defendant until January 3, 2019—one year after Defendant's separation from Plaintiff—from misappropriating any of Plaintiff's Confidential Business Information; providing IT staffing services to any of Plaintiff's competitors located within fifty miles of Plaintiff's San Francisco office; soliciting any clients for whom he provided services within the last two years on behalf of Plaintiff, including Wells Fargo; and hiring any of Plaintiff's consultants. (*Id.* ¶ 6.)

On June 24, 2018, Plaintiff filed a Demand for Arbitration with National Arbitration and Mediation ("NAM"). (NAM Compl., Ex. F, ECF No. 48-5.) Although many of the allegations in Plaintiff's NAM Statement of Claim mirrors the allegations pleaded in its Complaint, Plaintiff seeks only damages in its Demand for Arbitration, while Plaintiff seeks injunctive relief from this Court. (*Compare id.* at 18 (seeking damages), *with* Compl. at 17 (seeking "temporary, preliminary, and permeant injunctive relief").) Defendant filed an Answer to the Demand for Arbitration on July 24, 2018. (Koshy Cert. ¶ 8, Ex. G, ECF No. 48-5.)

On July 25, 2018, Plaintiff filed the instant Motion for Summary Judgment. (Pl.'s Mot., ECF No. 43.) Plaintiff essentially seeks to convert the June 11 preliminary injunction into a permanent injunction, arguing that (1) the Agreement is an enforceable contract; (2) the Agreement and the Addendum constitute separate contracts, so Defendant's breach under the

7

Agreement is not excused by Plaintiff's alleged breach of the Addendum; and (3) even if the

Agreement and the Addendum did constitute a single contract, Defendant waived any argument

that Defendant's breach under the Agreement is excused. (*Id.* at 11–18.) On August 21, 2018,

Defendant timely filed a Response Opposing Plaintiff's Motion for Summary Judgment and also

a Cross Motion to Dismiss. (*See* ECF Nos. 48–50.) Defendant contends that dismissal is

warranted because Plaintiff waived its right to litigate in this Court once Plaintiff submitted its

Demand for Arbitration. (Def.'s Br. at 18–21, ECF No. 49.) In the alternative, Defendant

contends that Plaintiff's Motion for Summary Judgment is (1) premature under Rule 56(d) of the

Federal Rules of Civil Procedure as the parties have not completed essential discovery (*id.* at 21–

28) and (2) unpersuasive as disputes of material fact exist over whether the Agreement is

enforceable (*id.* at 28–38). On September 11, 2018, Plaintiff filed a Reply in Support of

Plaintiff's Motion for Summary Judgment and a Response Opposing Defendant's Cross Motion

to Dismiss. (Pl.'s Reply, ECF No. 53.)[1]

## LEGAL STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead

---

[1] After briefing was completed, the parties filed several other items. On September 17, 2018, Defendant filed a Motion for Leave to File a Reply Brief in Support of Defendant's Cross Motion to Dismiss. (ECF No. 55.) On that same day, Defendant also filed a Notice of Supplemental Authority, offering a citation to a case from the Massachusetts Supreme Judicial Court with facts "strikingly similar to the facts in this case." (ECF No. 56.) On September 19, 2018, Plaintiff filed a Motion for Leave to File a Sur-Reply in Further Support of Plaintiff's Opposition to Defendant's Cross Motion to Dismiss (ECF No. 57) and a Motion to Strike Defendant's Statement of Supplemental Authority (ECF No. 58). On the same day, Defendant filed a Letter in Opposition to Plaintiff's Proposed Sur-Reply (ECF No. 59), which prompted Plaintiff to file a Response to Defendant's Letter Opposing Plaintiff's Proposed Sur-Reply (ECF No. 60). Lastly, on September 20, 2018, Defendant filed another letter in response. (ECF No. 61.)

a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). In resolving a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits." *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248–49. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

### I.      Plaintiff Is Not Required to Arbitrate Its Claim for Injunctive Relief

As a threshold matter, Defendant cross-moves to dismiss because, as Defendant contends, arbitration is Plaintiff's exclusive remedy. (*See* Def.'s Br. at 18–21.) Where there is a contract between the parties that provides for arbitration, there is "an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLC v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). Under the Federal Arbitration Act, a district court may stay a proceeding pending resolution of

9

arbitrable issues if those issues are within the scope of a binding arbitration agreement. *See* 9 U.S.C. §§ 3, 4. But "[i]f all of the claims involved in the action are arbitrable, the court may dismiss the federal action instead of staying it." *Thompson v. Nienaber*, 239 F. Supp. 2d 478, 482 (D.N.J. 2002) (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 600–02 (3d Cir. 2002)). However, arbitration agreements may be found unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing 9 U.S.C. § 2).

Here, Paragraph 19 of the Agreement requires the parties to arbitrate all claims relating to the enforcement of the Agreement, but Paragraph 20 of the Agreement provides an exception allowing Plaintiff "in its sole discretion [to] seek and/or obtain temporary, preliminary and/or final injunctive relief enforcing [the Agreement]." Defendant argues that "[a]lthough [Plaintiff] had the option to seek a preliminary injunction with the District Court, which it initially did, after the preliminary injunction was issued, [Plaintiff] voluntarily elected to pursue any further right to relief in arbitration by filing a Demand for Arbitration." (Def.'s Br. at 19–20.) Defendant points out that "[Plaintiff's] Demand for Arbitration states that it 'agrees that the decision and award of the Arbitrator will be final and binding as to *all claims* relating to our employment relationship with the Employee *that have been or could have been raised* under our Arbitration Agreement with the Employee.'" (*Id.* (emphasis removed in part).) Defendant concludes that because Plaintiff elected to file a Demand for Arbitration that includes "all claims . . . that have been or could have been raised," Plaintiff precluded itself from litigating its existing claim for injunctive relief in this Court. (*See id.*) The Court disagrees.

Defendant's contention seeks to disturb the primary intent of Paragraph 20 and thus the Court is unwilling to confer the contention much weight. *See Lukens Steel Co. v. United*

*Steelworkers of Am.*, 989 F.2d 668, 672 (3d Cir. 1993) (explaining that a district court must interpret the intent of the parties from the contractual language to determine whether or not a dispute is arbitrable). Paragraph 20—which expressly limits the scope of Paragraph 19 by exempting preliminary and permanent injunctive relief from arbitration—specifically contemplates dual proceedings in front of both an arbitrator and a court of competent jurisdiction. Plaintiff seeks, and has consistently sought up until this point, only *injunctive relief* in this Court's proceedings. (*See* Compl. at 17; Pl.'s Mot. at 18.) In contrast, Plaintiff seeks only *compensatory damages* in the arbitration proceedings. (*See* NAM Compl. at 18.) Other courts have understood and respected such carve-out provisions. *See, e.g., Aetrex Worldwide, Inc. v. Sourcing for You Ltd.*, 555 F. App'x 153, 155 (3d Cir. 2014) (affirming that temporary and permanent injunctive relief was adequately carved out of arbitration agreement); *Shapiro v. Baker & Taylor, Inc.*, 2009 U.S. Dist. LEXIS 48187, at *39 n.17 (D.N.J. June 9, 2009) (finding that "[t]he parties remain free to pursue claims for money damages through arbitration, and to appeal to the courts for equitable relief" where employee agreement carved out from mandatory arbitration any claim "for specific performance and/or other injunctive relief").[2]

To contend that Plaintiff has now waived its right to pursue injunctive relief in this Court is simply irreconcilable with the language in the Agreement. The language from the Demand for Arbitration that Defendant identifies—that Plaintiff agrees to arbitrate "all claims . . . that have

---

[2] Although Plaintiff relies on *Ortho Pharmaceutical Corp. v. Amgen, Inc.*, 882 F.2d 806 (3d Cir. 1989), for the proposition that "[c]ontracting parties routinely exempt requests for preliminary and permanent injunctive relief from arbitration" (Pl.'s Reply at 5–6), that reliance is misplaced. The court in *Ortho* explored a much narrower question than Plaintiff cares to admit: "whether the district court has subject matter jurisdiction to entertain a motion for *preliminary* injunctive relief in a dispute that the parties agree is arbitrable." 882 F.2d at 811 (emphasis added). Indeed, subsequent courts have interpreted *Ortho* as a "limited exception" and have held that "[t]he Third Circuit has not opened the door to allow the court to hear *all* equitable disputes" such as claims for *permanent* injunctive relief. *Thompson*, 239 F. Supp. 2d at 484–86 (emphasis added).

been or could have been raised"—is buried within boilerplate on a NAM-sanctioned Arbitration Request Form that was "Revised as of 7/1/16." (*See* NAM Compl. at 3.) This stock form does not embody the parties' intent better than the Agreement as it does not include the parties' language, it fails to require or even include a signature from Defendant, and it was not negotiated at arm's length between Plaintiff and Defendant. Although an agreement to arbitrate is presumed to be valid, the precise dispute or claim at issue must "fall[] within the scope of that agreement" in order to require arbitration. *See Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009) ("[E]ven if a court finds that the parties have agreed to arbitrate *some* disputes it must find, to order arbitration, that the parties have agreed to arbitrate the dispute in issue." (emphasis in original)). Accordingly, the Court denies Defendant's Cross-Motion to Dismiss.[3]

## II.    Plaintiff's Motion for Summary Judgment Fails

In its Motion, Plaintiff requests that the Court (1) enter summary judgment for its breach of contract claim and (2) convert the June 11, 2018 preliminary injunction to a permanent injunction. (*See* Pl.'s Mot. at 18.) Defendant opposes both requests, and Defendant also moves for further discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. (Def.'s Br. at 21–28.)

---

[3] As noted *supra*, Defendant filed a Motion for Leave to File a Reply Brief in Support of Defendant's Cross Motion to Dismiss (ECF No. 55), which triggered a series of subsequent filings: Plaintiff's Motion for Leave to File a Sur-Reply in Further Support of Plaintiff's Opposition to Defendant's Cross Motion to Dismiss (ECF No. 57), Defendant's Letter in Opposition to Plaintiff's Proposed Sur-Reply (ECF No. 59), Plaintiff's Response to Defendant's Letter Opposing Plaintiff's Proposed Sur-Reply (ECF No. 60), and Defendant's Letter in Response (ECF No. 61). In its decision, the Court considers all of these filings but nonetheless denies Defendant's Cross Motion to Dismiss.

## A.    *Request for Further Discovery Pursuant to Rule 56(d)*

Defendant requests further discovery pursuant to Rule 56(d) and consequently contends

that Plaintiff's Motion for Summary Judgment is premature. Rule 56(d) of the Federal Rules of

Civil Procedure provides that "[i]f a nonmovant shows by affidavit or declaration that, for

specified reasons, it cannot present facts essential to justify its opposition, the court may: (1)

defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to

take discovery; or (3) issue any other appropriate order." "[I]t is well established that a court 'is

obliged to give a party opposing summary judgment an adequate opportunity to obtain

discovery.'" *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) (quoting *Dowling

v. City of Phila.*, 855 F.2d 136, 139 (3d Cir. 1988)). District courts typically grant requests for

discovery under Rule 56(d) "as a matter of course" regardless of whether the request is made by

motion, affidavit, or declaration. *Shelton v. Bledsoe*, 775 F.3d 554, 566 (3d Cir. 2015) (quoting

*Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 309 (3d Cir. 2011)). "This is particularly

true when there are discovery requests outstanding or where relevant facts are under control of

the party moving for summary judgment." *Id.* The party seeking such a request must proffer

"(1) what particular information is sought; (2) how, if uncovered, it would preclude summary

judgment; and (3) why it has not previously been obtained." *Duran v. Warner*, 2013 U.S. Dist.

LEXIS 117462, at *11-12 (D.N.J. Aug. 20, 2013)

Here, Defendant urges the Court to deny Plaintiff's Motion for Summary Judgment as

"the parties have not completed essential discovery." (Def.'s Br. at 21.) First, Defendant

identifies specific information that he deems necessary in order to respond to Plaintiff's Motion:

> information and documents relating to [Plaintiff's] business with client Wells
> Fargo (the only client at issue) including (1) the amount of business (*i.e.*, revenue
> and volume) [Plaintiff] has done with client Wells Fargo both before and after
> Defendant's resignation from [Plaintiff] (including in the San Francisco area); and

13

(2) any scorecards, grades, ratings or other performance evaluations given to [Plaintiff] from Wells Fargo both before and after Defendant's resignation from [Plaintiff].

(DiMaria Cert. ¶ 15.)[4] Second, Defendant asserts that this discovery relates to Plaintiff's "burden of proving irreparable harm" required for a permanent injunction. (*Id.* ¶ 16.) Third, Defendant proffers a legitimate reason as to why this discovery was not previously obtained. Defendant explains that in May 2018, leading up to the preliminary injunction briefing, Defendant sought this discovery but Plaintiff failed to produce it—despite a deficiency letter and subsequent meet and confer. (*Id.* ¶¶ 5–10.) Although Defendant had an opportunity to file a motion to compel during this time, "[g]iven the expedited nature of discovery, and [the fact] that Defendant's brief was due to the Court within a few days after receiving Plaintiff's supplemental discovery responses, Defendant did not file a motion to compel." (*Id.* ¶ 11.) Defendant also points out that no Rule 26 conference has been held since the Court issued the preliminary injunction on June 11, 2018. (*Id.* ¶ 12.) In fact, the Court is under the impression that no discovery has been exchanged since the parties participated in expedited discovery leading up to the preliminary injunction.

In response, Plaintiff characterizes Defendant's argument as a "delay tactic" that "seeks to defer the inevitable." (Pl.'s Reply at 8.) Plaintiff also argues that "Defendant chose not to file a motion to compel" and therefore lost the ability to obtain further discovery now. (*Id.* at 11–12.)

The Court is satisfied that Defendant has met the relatively light standard set forth in Rule 56(d). Although Defendant had an opportunity to file a motion to compel during expedited discovery in May 2018, those circumstances—where Defendant received Plaintiff's

---

[4] Plaintiff also requests further discovery regarding whether the Agreement and the Addendum constitute a single contract. The Court rejects that request as further explained *infra*.

supplementary responses, the event triggering the opportunity to file the motion, roughly ten

days before his brief opposing Plaintiff's motion for preliminary injunction was due—should not

preclude Defendant from that discovery now. *Cf. AstraZeneca AB v. Reddy's Labs. Inc.*, 2014

U.S. Dist. LEXIS 73111, at \*8 (D.N.J. May 29, 2014) (allowing further discovery under Rule

56(d) to review documents that were received *before* the motion for summary judgment was

filed). The Court can imagine a scenario where a litigant may be precluded from Rule 56(d)

relief where that litigant failed to move to compel, sought to delay, and otherwise sat on his

hands during a discovery period. But Defendant did not do that here. On the contrary,

Defendant sought this discovery in his first request; promptly sent Plaintiff a deficiency letter

three days after receiving, what Defendant deemed to be, an inadequate response; and

participated in a meet and confer with Plaintiff regarding the issues raised in the deficiency letter.

(*See* DiMaria Cert. ¶¶ 2–10.) Accordingly, the Court grants Defendant's request for discovery

under Rule 56(d).

B.     *Breach of Contract Claim*

Notwithstanding Defendant's request for further discovery pursuant to Rule 56(d), the

Court is unable to enter summary judgment for Plaintiff at this time. Under New Jersey law,[5]

---

[5] On April 2, 2018, this Court issued a Memorandum Opinion regarding the governing state law of this contract dispute. (*See* Mem. Op. at 3.) As explained in the Memorandum Opinion, the Agreement contained a choice-of-law provision selecting New Jersey law; the Court ultimately determined that the choice-of-law provision is enforceable and thus New Jersey law governs this dispute. (*See id.* at 3, 7.) Defendant nonetheless argues that "it is clear that the Agreement must be construed under California law" and that "there is absolutely no New Jersey interest protected in this lawsuit" (Def.'s Br. at 29–30). In fact, Defendant filed a Notice of Supplemental Authority, offering a citation to *Oxford Global Resources, LLC v. Hernandez*, 480 Mass. 462 (Sept. 7, 2018), which contains facts, as Defendant contends, "strikingly similar to the facts in this case." (ECF No. 56.) In response, Plaintiff filed a Motion to Strike Defendant's Statement of Supplemental Authority. (ECF No. 58.) Because the Court is not bound by the authority cited in Defendant's Notice and because the court in that authority analyzed the parties' choice-of-law contractual provision under Massachusetts law rather than New Jersey law, the Court grants

Plaintiff carries the burden to prove four elements to establish a breach of contract: (1) a valid and enforceable contract, (2) a breach of that contract, (3) damages flowing therefrom, and (4) the plaintiff performed its own contractual duties. *Nat'l Reprographics, Inc. v. Strom*, 621 F. Supp. 2d 204, 222 (D.N.J. 2008) (citing *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 385 n.21 (D.N.J. 2006)). Defendant concedes that he breached the Agreement, but the parties disagree as to whether the contractual provisions at issue are enforceable and, even if they are enforceable, whether Defendant's breach is excused.

### 1.    Plaintiff Fails to Satisfy Standard for Summary Judgment

Defendant executed the Agreement on July 23, 2015. Although Plaintiff pleads just a single count of breach of contract, Plaintiff alleges in the instant Motion that Defendant breached the Agreement numerous times. (*Compare* Compl. ¶¶ 57–65 (pleading single count), *with* Pl.'s Mot. at 1 (alleging four breaches).) Four restrictive covenants in the Agreement are of import here. Plaintiff asserts that Defendant breached (1) the Non-Disclosure Clause (Agreement ¶ 2) by using and disclosing Plaintiff's Confidential Business Information; (2) the Non-Compete Clause (*id.* ¶ 3) by working for a direct competitor, Artech, located within fifty miles of Plaintiff; (3) the Non-Solicitation Clause (*id.* ¶ 5) by soliciting business from Wells Fargo, one of Plaintiff's clients; and (4) the Notification of Employment Clause (*id.* ¶ 15) by refusing to inform Plaintiff where Defendant planned to work after resignation. (*See* Pl.'s Mot. at 1.)

In order to be enforceable, a post-employment restrictive covenant must be "reasonable in view of all the circumstances of the particular case." *Solari Indus., Inc. v. Malady*, 264 A.2d 53, 56 (1970). Under New Jersey law, a restrictive covenant is enforceable only to the extent that it (1) protects the legitimate interests of the employer, (2) imposes no undue hardship on the

Plaintiff's Motion to Strike and will not consider the materials in Defendant's Notice of Supplemental Authority.

employee, and (3) is not injurious to the public. *Cmty. Hosp. Grp., Inc. v. More*, 869 A.2d 884, 897 (N.J. 2005) (citing *Karlin v. Weinberg*, 390 A.2d 1161, 1166 (N.J. 1978)).

The parties disagree on whether the restrictive covenants at issue protect the "legitimate interests" of Plaintiff. Plaintiff contends that its "customer relationships and confidential information are worthy of protection." (Pl.'s Mot. at 11.) Defendant responds that the Agreement is not necessary to protect the information sought to be protected by Plaintiff— namely, client contact information, consultant contact information, client notes, and candidates notes. (Def.'s Br. at 36; Def.'s Resp. SMF ¶ 6.) First, Defendant disclaims that he ever misappropriated such information. (*See* Def.'s Br. at 36; Def.'s Resp. SMF ¶¶ 6, 40–41.) But Defendant contends that even if he did, Plaintiff's client and consultant contact information "is not confidential because Artech had the contact information for many of the consultants and Wells Fargo managers [Defendant] did business with at [Plaintiff] *before* [Defendant] joined Artech" and thus the information "is readily ascertainable and well known within the industry." (Def.'s Br. at 36–37; Def.'s Resp. SMF ¶ 27.) In its reply brief, Plaintiff characterizes Defendant's Brief as "disingenuous" as it contradicts Defendant's own deposition testimony. (Pl.'s Reply at 15–17.) Indeed, Defendant seemingly concedes at one point in his deposition that sharing Plaintiff's "database of information" with a competitor "would not be appropriate" because it is Plaintiff's "confidential" information. (Carino Dep. 296:07–297:03.)

Notwithstanding Defendant's apparent concession, the Court finds that Plaintiff has failed to carry its burden. It is not clear from the muddied record exactly what information Defendant took with him to Artech. (*See, e.g.*, Carino Dep. 183:20–187:7, 188:8–15 (discussing Defendant's contact with Wells Fargo managers because Defendant "knew him already"). *Compare* Pl.'s SMF ¶ 40 (contending that "Defendant took contact information for almost 550

17

Wells Fargo hiring managers in his personal cell phone . . . and a still unknown . . . number of client e-mails"), *with* Def.'s Resp. SMF ¶ 40 (denying such an allegation).)

Moreover, the Court is unable to distill whether the information Plaintiff seeks to protect is, as Defendant contends, "readily ascertainable and well known within the industry." (Def.'s Br. at 36–37; Def.'s Resp. SMF ¶ 27.) Of course, "[e]mployers have a right to contractually protect their confidential information." *Nat'l Reprographics*, 621 F. Supp. 2d at 226 (citing *Ingersoll-Rand Co. v. Ciavatta*, 542 A.2d 879, 892–93 (1988); *Whitmyer Bros. v. Doyle*, 274 A.2d 577, 581 (N.J. 1971)). But in order to be deemed "confidential" and consequently warrant judicial protection, the information must be "unique and not generally known throughout the industry" as opposed to "merely the knowledge, skill, or expertise learned or developed over an employee's career or tenure with the employer." *See id.* (citing *Ingersoll-Rand*, 542 A.2d at 889, 892). Although a "relationship with customers" is a "legitimately protectible interest[]," the information must "go[] beyond the mere identity of customers or general skills learned in the trade." *See, e.g.*, *id.* (protecting employer's "marketing plans, sales projections, product strategies, customer buying habits, and internal methods to bring profitability to the company"). Because genuine disputes of material fact exist as to specifically what information is contained within the database, what information Defendant misappropriated, and what information is confidential, the Court is unable to enter summary judgment for Plaintiff at this time. Accordingly, the Court denies Plaintiff's Motion as to its breach of contract claim.

### 2. Defendant's "Single Contract" Argument Fails as a Matter of Law

Although the Court denies Plaintiff's Motion and need not go further, the Court finds it appropriate to address one of Defendant's arguments in order to conserve the party's resources during the impending discovery. Defendant unequivocally admits that if the Agreement is

18

enforceable, he breached it. (Def.'s Resp. SMF ¶¶ 21–26; *see also* Carino Dep. 63:17–64:19.) But Defendant puts forth an affirmative defense: Defendant contends that his breach of the Agreement is excused because Plaintiff's alleged breach of the Addendum occurred before Defendant's breach of the Agreement, rendering the Agreement unenforceable by Plaintiff. (*See* Def.'s Br. at 30–35.) This contention necessarily presumes that the Agreement and the Addendum comprise a single contract, over which the parties dispute.

Defendant correctly contends that the facts underlying whether the Agreement and the Addendum comprise a single contract and whether Plaintiff breached the Addendum constitute disputed material facts (Def.'s Br. at 31–35), but this affirmative defense is not available to Defendant. As Plaintiff points out, even if the Agreement and the Addendum constituted the same contract and even if Plaintiff breached that contract first, Defendant's excuse for non-performance fails as a matter of law. (*See* Pl.'s Mot. at 17–18; Pl.'s Reply at 12–14.) Defendant waived this excuse by commencing litigation but otherwise continuing to perform his duties under the Agreement.

It is well-settled law in New Jersey that "a material breach by either party to a bilateral contract excuses the other party from rendering any further contractual performance." *Bright Lights USA, Inc. v. Elecsys Inc.*, 2014 U.S. Dist. LEXIS 178663, at \*29 (D.N.J. Dec. 31, 2014) (citing *Ross Sys. v. Linden Dari-Delite, Inc.*, 173 A.2d 258, 264–65 (N.J. 1961); *Magnet Res., Inc. v. Summit MRI, Inc.*, 723 A.2d 976, 981 (N.J. Super. Ct. App. Div. 1998)). When a breach occurs, the non-breaching party may elect one of two options: "the non-breaching party may either stop performance and assume the contract is avoided, or continue its performance and sue for damages." *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 376 (3d Cir. 1992); *see also Ramada Worldwide v. Clinton Commer. Dev., LLC*, 2016 U.S. Dist. LEXIS 131014, at \*5

19

(D.N.J. Sep. 26, 2016) ("[A] contracting party alleging material breach by the counterparty must make 'a genuine election. . . of continuing performance or of ceasing to perform, and any action indicating an intention to perform will operate as a conclusive choice.'" (quoting *Frank Stamato & Co. v. Lodi*, 71 A.2d 336, 339 (N.J. 1950))). However, "[u]nder no circumstances may the non-breaching party stop performance *and* continue to take advantage of the contract's benefits." *S & R Corp.*, 968 F.2d at 376 (emphasis added); *see also Ramada Worldwide*, 2016 U.S. Dist. LEXIS 131014, at *1–2 (precluding defendants from utilizing excuse as affirmative defense in summary judgment posture because defendants took no action to repudiate the contract after plaintiff's alleged breach and instead "elected to continue to perform under the contract," which "deprived [defendants] of any excuse for ceasing performance" months later).

Here, Defendant alleges that Plaintiff breached the Addendum by failing to pay Defendant a bonus. Defendant contends that Plaintiff met its revenue goals as outlined in the Addendum, so he was entitled to a bonus of up to $100,000 to be paid by August 31, 2017. (Def.'s Counter SMF ¶¶ 9, 17.) But on August 31, Plaintiff failed to pay Defendant that bonus or any other bonus. (*Id.* ¶¶ 18–20.) At this precise moment, believing that Plaintiff materially breached the employment contract, Defendant had a binary choice: Defendant could have either continued performance under the contract or ceased performance under the contract. *Aetrex Worldwide, Inc v. Sourcing for You Consulting, Ltd.*, 2013 U.S. Dist. LEXIS 54943, at *14 (D.N.J. Apr. 16, 2013) (characterizing the choice as "continue to perform or cease to perform"). Defendant elected to *continue* performance. Indeed, Defendant maintained his employment relationship with Plaintiff by performing work for Plaintiff, earning a salary and commissions, and even attending work functions such as a company trip to Mexico paid for by Plaintiff. (Def.'s Resp. SMF ¶¶ 18–20.) Although Defendant commenced litigation regarding Plaintiff's

alleged breach on September 18, 2017, neither Plaintiff nor Defendant indicated any intention to repudiate or renounce the remainder of their employment relationship or the terms of the Agreement. Both parties continued to perform under the Agreement until Defendant resigned— and, as he admits, simultaneously breached the Agreement by starting his new job with Artech— on January 3, 2018. (*Id.* ¶¶ 19, 21.)

Defendant contends that "an employee who is forced to bring an action against his employer to collect earned but unpaid wages should not be required to quit his job and/or waive all other rights or arguments he has with regard to the employment relationship." (Def.'s Br. at 37 n.4.) But Defendant misunderstands his election. Defendant's election to continue performance under the Agreement "operated as a conclusive choice, not indeed depriving him or a right of action for the breach which has already taken place, but depriving him of any excuse for ceasing performance on his own part." *Aextrex*, 2013 U.S. Dist. LEXIS 54943, at *14 (quoting *Frank Stamato*, 71 A.2d at 339). Plaintiff's alleged breach does not confer upon Defendant a proverbial get-out-of-jail-free card for an indefinite period of time. Nearly four months elapsed between the time Plaintiff allegedly breached the Addendum and Defendant breached the Agreement. Moreover, Defendant admitted in his deposition that he resigned effective immediately on January 3, 2018 in order to start a new job with Plaintiff's competitor that very same day—despite accepting that job offer two weeks earlier on December 19, 2018— fully aware and actually intending to breach numerous provisions of the Agreement. (*See* Carino Dep. 84:21–85:16, 139:1–9, 148:1–21.) Therefore, even if the Court were to determine that the Agreement and the Addendum comprised a single contract, and even if the Court were to determine that Plaintiff breached that contract, Defendant waived his right to declare a forfeiture of the Agreement and thus excuse his violations.

## C. *Request for Permanent Injunction*

Plaintiff also requests that the Court convert its June 11, 2018 preliminary injunction to a permanent injunction. (Pl.'s Mot. at 18.) Plaintiff complains that "[a]lthough Defendant was enjoined from engaging in certain conduct until January 3, 2019, the preliminary injunction also only prohibits [Defendant] (and Artech) from using and disclosing [Plaintiff's] confidential information until that date." (Pl.'s Reply at 18.) Indeed, "[t]he Agreement sets no such limit on the use or disclosure of [Plaintiff's] confidential information, so at the very least a permanent injunction is warranted to address that issue." (*Id.*)

At this stage of the proceedings, Plaintiff must show that there is no genuine dispute as to any material fact concerning the required elements for a permanent injunction.

> In order to obtain a permanent injunction, Plaintiff[] "must demonstrate: (1) that [Plaintiff has] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between [Plaintiff] and [Defendant], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

*Sanofi-Aventis Deutschland Gmbh v. Glenmark Pharm. Inc., USA*, 821 F. Supp. 2d 681, 693 (D.N.J. 2011) (quoting *eBay Inc., et al. v. MercExchange LLC*, 547 U.S. 388, 391 (2006)).

However, "[o]nly a plaintiff who has achieved actual success on the merits may obtain a permanent injunction." *Port Drivers Fed'n 18, Inc. v. All Saints Express, Inc.*, 757 F. Supp. 2d 443, 460 (D.N.J. 2010) (citing *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001)). Because, as discussed *supra*, the Court grants Defendant's request pursuant to Rule 56(d) and denies Plaintiff's Motion as to its breach of contract claim, the Court also denies Plaintiff's request for permanent injunction.

22

## CONCLUSION

For the reasons stated herein, Defendant's Cross Motion to Dismiss is denied, Plaintiff's

Motion for Summary Judgment is denied, and Defendant's request for further discovery pursuant

to Rule 56(d) is granted. An appropriate order will follow.

Date: 09/24/2018

*Anne E. Thompson*

ANNE E. THOMPSON, U.S.D.J.