NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DIVERSANT, LLC,<br><br>       Plaintiff,<br><br>   v.<br><br>MITCHELLE CARINO,<br><br>       Defendant. | Civ. No. 18-3155<br><br>**OPINION** |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court on a Motion to Dismiss for Mootness brought by Defendant Mitchelle Carino ("Defendant"). (ECF No. 71.) Plaintiff Diversant, LLC ("Plaintiff") opposes. (ECF No. 75.) Plaintiff also filed a Cross Motion for Attorneys' Fees and Costs (ECF No. 76), which Defendant opposes (ECF No. 79). The Court has decided the motions after considering the written submissions without oral argument pursuant to Local Civil Rule 78.1(b). For the following reasons, the Court denies both Defendant's Motion to Dismiss and Plaintiff's Cross Motion for Attorneys' Fees and Costs.

## BACKGROUND

As the parties are well familiar with the facts of this case, the Court provides a briefer recitation of the facts than in prior opinions.[1] Plaintiff essentially assists companies in identifying and recruiting IT consultants and contractors and thus maintains a large database of

---

[1] The Court adopts the fuller factual recitation contained within its Opinion dated September 24, 2018. (*See* Op. at 1–8, ECF No. 63.)

1

contacts in order to serve its clients.  (Compl. ¶¶ 9, 11, ECF No. 1.)  On July 22, 2015, Plaintiff hired Defendant to assist in providing IT consultants and contractors to Plaintiff's San Francisco-based clients, which primarily included Wells Fargo.  (Def.'s Statement of Undisputed Material Facts ("SUMF") ¶¶ 1–2, ECF No. 71-3.)  In this role, Defendant had access to Plaintiff's client and consultant database.  (Compl. ¶ 6.)

In connection with this employment, Plaintiff and Defendant executed an employment agreement, the "At-Will, Restrictive Covenant and Arbitration Agreement" (the "Agreement"), wherein the parties agreed to several covenants of import here.  (Def.'s SUMF ¶ 3.)  First, Defendant agreed never to use or disclose confidential information and/or trade secrets ("Confidential Business Information") such as information regarding consultants or customers that "is not commonly known by or available to the public."  (Agreement ¶ 2 (the "Non-Disclosure Clause"), ECF No. 71-2.)  Second, Defendant agreed not to compete with Plaintiff's business within a fifty-mile radius of its location for a period of one year following the termination of his employment.  (*Id.* ¶ 3 (the "Non-Compete Clause").)  Third, also for a period of one year following the termination of his employment, Defendant agreed not to "solicit or attempt to solicit any information technology staffing services business" from any of Plaintiff's actual or prospective clients.  (*Id.* ¶ 5 (the "Non-Solicitation Clause").)  Finally, Defendant agreed that any legal claims must be submitted to arbitration, but that Plaintiff, in its sole discretion, may properly seek "temporary, preliminary and/or final injunctive relief . . . in any court of competent jurisdiction."  (*Id.* ¶¶ 19–20.)

On January 3, 2018, Defendant resigned from his employment with Plaintiff and on the same day began employment with Artech, a San Francisco-based firm that is located within fifty miles of Plaintiff, services Wells Fargo, and competes with Plaintiff.  (*See* Op. at 5.)  Defendant

also began soliciting and doing business with Wells Fargo immediately upon joining Artech. (*See id.*)

On March 5, 2018, Plaintiff filed a Verified Complaint and a Motion for Temporary Restraining Order, Preliminary Injunction, Expedited Discovery, and Preservation Order. Plaintiff pleads two counts: (1) breach of contract, contending that Defendant breached, *inter alia*, the Non-Compete Clause and the Non-Solicitation Clause (Compl. ¶¶ 59–60); and (2) injunctive relief, seeking to enjoin Defendant from, among other things, misappropriating Plaintiff's Confidential Business Information (*id.* ¶ 69).

After expedited discovery, the Court held a hearing regarding Plaintiff's Application for Preliminary Injunction on June 11, 2018. (ECF No. 41.) On that same day, the Court issued a Preliminary Injunction (the "Preliminary Injunction"). (ECF No. 40.) The Court enjoined Defendant until January 3, 2019—one year after Defendant's separation from Plaintiff—from misappropriating any of Plaintiff's Confidential Business Information; providing IT staffing services to any of Plaintiff's competitors located within fifty miles of Plaintiff's San Francisco office; soliciting any clients for whom he provided services within the last two years on behalf of Plaintiff, including Wells Fargo; and hiring any of Plaintiff's consultants. (*Id.* ¶ 6.)

On July 25, 2018, Plaintiff filed a Motion for Summary Judgment, essentially seeking to convert the Preliminary Injunction into a permanent one. (ECF No. 43.) On August 21, 2018, Defendant opposed and requested further discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. (Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J. at 21–28, ECF No. 49.) Defendant also filed a Cross Motion to Dismiss, contending that the Agreement compels arbitration of any pending issues. (*See id.* at 18–21.)

On September 24, 2018, the Court denied both Plaintiff's Motion for Summary Judgment and Defendant's Motion to Dismiss. (*See* Order at 1, ECF No. 64.) The Court instead granted Defendant's request for further discovery pursuant to Rule 56(d). (*See id.*) The Court also explained that in regard to the Non-Disclosure Clause, "genuine disputes of material fact exist as to specifically what information is contained within the database, what information Defendant misappropriated, and what information is confidential." (Op. at 16–18.)

On January 11, 2019, while motions to compel additional discovery were still pending (*see* ECF Nos. 69–70), Defendant filed the instant Motion to Dismiss. Defendant argues that the Preliminary Injunction expired on January 3, 2019, so "there is no longer any threat to [Plaintiff] that [Defendant] will violate the [Agreement]" and thus "the case is deemed moot and . . . must be dismissed." (Def.'s Br. at 1, ECF No. 71-1.) On February 4, 2019, Plaintiff opposed, contending that an open issue remains as to whether Defendant's cellphone, which Defendant has turned over to his attorneys, contains Confidential Business Information in violation of the Non-Disclosure Clause. (*See* Pl.'s Br. at 7, ECF No. 75.) Plaintiff also filed a Cross Motion for Attorneys' Fees and Costs, arguing that the expiration of the Preliminary Injunction entitles it to fees and costs now. (*Id.* at 9–14.) Plaintiff requests that Artech be held responsible for these fees and costs and, if not, requests limited discovery in order to determine Artech's liability for these fees and costs. (*Id.* at 14–17.) On February 25, 2019, Defendant replied in support of its Motion to Dismiss and opposed Plaintiff's Cross Motion (ECF No. 79), and on February 28, 2019, Plaintiff replied in support of its Cross Motion (ECF No. 80-1).[2] Both motions are currently before the Court.

---

[2] Additionally, on March 1, 2019, Defendant filed a letter requesting that the Court disregard Plaintiff's reply brief, contending that the local rules prohibited Plaintiff from doing so. (ECF No. 81.)

## **LEGAL STANDARD**

"Dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is appropriate when the District Court lacks jurisdiction over the subject matter of the case." *Goodman v. People's Bank*, 209 F. App'x 111, 113 (3d Cir. 2006). To remain within the jurisdictional purview of the court, an actual case or controversy must exist "at all stages of review, not merely at the time the complaint is filed." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013). The constitutional "case-or-controversy requirement . . . limits the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Ordonez-Tevalan v. AG of the U.S.*, 837 F.3d 331, 339 (3d Cir. 2016) (quoting *Thomas v. AG of the U.S.*, 625 F.3d 134, 139–40 (3d Cir. 2010)).

Mootness arises where "changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Ordonez-Tevalan*, 837 F.3d at 339–40. For example, "an offer for the entirety of a plaintiff's claim will generally moot the claim." *Goodman*, 209 F. App'x at 113 (quoting *Weiss v. Regal Collections*, 385 F.3d 337, 342 (3d Cir. 2004)). Where a plaintiff can no longer "demonstrate that he possesses a legally cognizable, or 'personal stake,' in the outcome of the action. . . . the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare*, 569 U.S. at 71–72. Because mootness necessarily means no continuing case or controversy exists between the parties, its finding removes the case from the subject matter jurisdiction of the court.

## DISCUSSION

### I.     Motion to Dismiss

Defendant moves to dismiss exclusively on the basis that the Preliminary Injunction expired on January 3, 2019. (*See* Def.'s Br. at 6–12.) Defendant focuses much of his attention on the Non-Compete Clause and the Non-Solicitation Clause, each of which was enforceable—pursuant to both the Agreement and the Preliminary Injunction—for just one year. (*See id.* at 7–10.) Defendant argues that "[b]ecause the Agreement expired, [Defendant] is free to compete against [Plaintiff] if he so chooses. . . . [T]here is no risk of [Defendant] violating the Agreement, and thus, there is no harm left to enjoin." (*Id.* at 6.) Defendant is correct only insofar as the dispute regarding these two covenants is now moot.[3]

Defendant also addresses at the end of its Brief another argument "*in the event* that [Plaintiff] argues its claims are not moot because it *may* seek a permanent injunction enjoining [Defendant] from using, disclosing, or misappropriating [Confidential Business Information]." (Def.'s Br. at 10–11 (emphasis added).) The Court is surprised, however, that Defendant treats this argument as such a conjectural possibility. The Preliminary Injunction specifically enjoined Defendant from misappropriating any of Plaintiff's Confidential Business Information. (Prelim. Inj. ¶ 6.) Plaintiff then sought a permanent injunction, specifically expressing concern in regard to its Confidential Business Information. (*See* Pl.'s Mem. in Supp. of Mot. for Summ. J. at 1–4, 8, 11, ECF No. 43-5.) And just a few months ago, the Court denied Plaintiff's Motion for Summary Judgment and granted Defendant's request for further discovery predicated on the fact

---

[3] Plaintiff concedes this notion. (*See* Pl.'s Br. at 7 (explaining that if the only further relief Plaintiff were seeking is enforcement of the Non-Compete and Non-Solicitation clauses, "then [Defendant] is likely correct that when the [P]reliminary [I]njunction expired on January 3, 2019, this case would arguably be moot").)

that, *inter alia*, "genuine disputes of material fact exist as to specifically what information is contained within the database, what information Defendant misappropriated, and what information is confidential." (Op. at 18.) The parties have vigorously contested every phase of this litigation, so it should be obvious to all by now that Plaintiff is seeking to enjoin Defendant from using or disclosing its Confidential Business Information and that Defendant's entitlement to the Confidential Business Information is a salient, open question.

Although Defendant attempts to persuade that he "does not have access to [the Confidential Business Information] . . . [so] there is no threat of [Defendant] using or misappropriating it" (Def.'s Br. at 12), Defendant acknowledges that the information Plaintiff seeks to protect is on Defendant's cellphone that he merely delivered to his attorneys (*id.* at 11). This circumstance is not a permanent solution. Without a Court order, nothing is stopping Defendant from resuming possession of the cellphone and accessing what Plaintiff alleges is confidential and thus protected information.

Defendant wishes to dismiss this action, but dismissal would require the Court to make factual findings in regard to the very subject on which the Court ordered further discovery. Because Plaintiff seeks to permanently enjoin Defendant from accessing, using, or disclosing its Confidential Business Information, this action is not moot, and Defendant's Motion must be denied.

**II.    Cross Motion for Attorneys' Fees**

Plaintiff argues that it is entitled to recover attorneys' fees now that the Preliminary Injunction has expired. (*See* Pl.'s Br. at 9–14.) Implicit in Plaintiff's request is the belief that this Court even has jurisdiction to decide such a question. This belief is not a foregone

conclusion, however, because Defendant insists that, pursuant to the Agreement, any request for attorneys' fees must be presented to an arbitrator. (Def.'s Reply at 6–9.)

As a threshold matter, this Court indeed retains jurisdiction to decide the question of whether the Agreement compels the parties to dispute attorneys' fees in arbitration.[4] The Agreement unequivocally delegates the question of arbitrability to this Court: "Any issues about whether a dispute constitutes a Legal Dispute subject to arbitration will be determined by a court of competent jurisdiction and not by an arbitrator." (Agreement ¶ 19.) Therefore, this Court has jurisdiction to decide whether the parties must submit any requests for attorneys' fees to arbitration.

Moving on to the merits of the question now, the Court finds that Plaintiff must submit its request for attorneys' fees to arbitration, rather than litigate it in this Court. Paragraph 17 of the Agreement contains the provision regarding attorneys' fees and costs: "In any suit or other proceeding to determine, confirm, or enforce any rights of obligations under this Agreement, the prevailing party shall be entitled to an award of its reasonable attorneys' fees, expert witness fees and all costs and expenses of litigation and appeal." Paragraph 19 then establishes a default rule

---

[4] "[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019); *see also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (noting that "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement"). The Supreme Court has recently held that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein*, 139 S. Ct. at 531. But it also cautioned that "courts 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" *Id.* (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); s*ee also Moon v. Breathless Inc.*, 868 F.3d 209, 213 (3d Cir. 2017) ("Under New Jersey law, 'the law presumes that a court, not an arbitrator, decides any issue concerning arbitrability.'" (quoting *Morgan v. Sanford Brown Inst.*, 137 A.3d 1168, 1177 (N.J. 2016))).

requiring arbitration for "enforcement of any provision . . . or any other dispute between [Defendant] and [Plaintiff]." (Agreement ¶ 19.) This blanket provision allows for exceptions, but only "as *explicitly* provided" within the Agreement. (*Id.* (emphasis added).) As explained in the Court's Opinion on September 24, 2018, injunctive relief in a court of competent jurisdiction is one such exception. (Op. at 9–12; Agreement ¶ 20 (carving out injunctive relief from arbitration requirement).) Compared to the explicit language in Paragraph ¶ 20 exempting injunctive relief—"[n]otwithstanding the Parties' agreement to submit all Legal Disputes to final and binding arbitration as set forth in Paragraph 19, [Plaintiff] may . . . seek . . . injunctive relief"—Paragraph 17 does not contemplate or even mention its exclusion from mandatory arbitration. Interpreting Paragraphs 17 and 20 both as exceptions despite their diverging language would be discordant; such an interpretation would lack pragmatism and harmony within the Agreement.

One may contend that the words "[i]n any suit or other proceeding" envision a request for attorneys' fees in a court, but a waiver of arbitration must not require semantic contortions; "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) (emphasis added) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). Indeed, a presumption of arbitrability applies where "an arbitration agreement is ambiguous about whether it covers the dispute at hand. Otherwise, the plain language of the contract holds." *White v. Sunoco, Inc.*, 870 F.3d 257, 262 (3d Cir. 2017); *see also Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 231 (3d Cir. 2012) (finding that "the arbitration agreement is ambiguous regarding the award of attorneys' fees . . . [and] that the District Court

erred in determining that it could not compel arbitration before resolving the issue" (citing *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 406–07 (2003))). Because any arbitrable exception must be "explicitly provided" within the Agreement and no explicit instruction exempting attorneys' fees exists within Paragraph 17 of the Agreement, Plaintiff must submit its request for attorneys' fees to an arbitrator.

## **CONCLUSION**

For the reasons stated herein, Defendant's Motion to Dismiss is denied, and Plaintiff's Cross Motion for Attorneys' Fees and Costs is denied. An appropriate order will follow.


Date: 03/08/2019                                                          */s/ Anne E. Thompson*
                                                                                ANNE E. THOMPSON, U.S.D.J.